### RAVIN v. SUBIN.

(City Court of New York, General Term. December 27, 1899.)

1. TRIAL—CHARGE ON EFFECT OF TESTIMONY.
    A refusal to charge on the effect of testimony, if found to be true, was proper.
2. FRAUDULENT CONVEYANCES—EXISTENCE OF FRAUD.
    Fraud must exist in the minds of both parties to invalidate a conveyance.
3. SAME—HOW PROVED.
    Fraud to invalidate a conveyance may be deduced from indirect testimony.
4. SAME—FRAUDULENT SALE—WHAT CONSTITUTES.
    That a seller intended to defraud his creditors by the sale would not make it fraudulent unless the buyer had notice of the intention, and was a party to the fraud.

Appeal from trial term.

Action by Isaac Ravin against Jacob Subin. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal. Affirmed.

Argued before FITZSIMONS, C. J., and O'DWYER and SCHUCH-MAN, JJ.

Louis Levy, for appellant.
William L. Mathot, for respondent.

O'DWYER, J. The action was brought to recover damages for a conversion by defendant of personal property. The defendant denied ownership in plaintiff, and attempted to justify as a city marshal under a warrant of attachment issued against one Sarah Aaronson, the plaintiff's grantor. On the trial, plaintiff introduced a bill of sale made by Sarah Aaronson on October 2, 1895, of the goods in controversy, and testified that on that date she paid her $300

therefor, and thereupon entered into possession thereof. On the following day the defendant took possession of the goods under a warrant of attachment issued against Sarah Aaronson, and subsequently removed the goods. The defendant contended that the alleged sale to plaintiff was fraudulent, and made with the intent to cheat and defraud the creditors of Mrs. Aaronson, and in support of this contention the witness Eisenbund testified as follows:

"I saw Ravin in Mrs. Aaronson's grocery store the day before we got the attachment. He was talking to Mrs. Aaronson. I asked her for the money, and she postponed me, and told me she could not give me any money to-day, and to come after the holidays. Then I went away, and came in an hour later, and then I found Ravin in the store. It was a busy store, and he was sitting on a barrel, reading a paper. I told Mrs. Aaronson, in Ravin's presence, that I understood she wanted to sell the store, and I warned Ravin not to buy the store until she paid me my money. Mrs. Aaronson said: 'No; that man is a relative of mine, and he has no intention to buy the store. He simply came to visit me.' This was said in Ravin's presence. Some customers came in, and I called Ravin outside, and told him that I understood he wanted to buy the place; that it was not the time for him to be in a grocery store, reading a paper, and that something must be the matter. I told him that I warned him not to buy the store, and then Ravin said to me: 'I have never been in the grocery business, and never shall be, either. I am a jeweler and diamond dealer, and have no intention to buy it, and I did not even know she wanted to sell it. I only came to visit her.' "

This testimony is contradicted by the plaintiff, who testifies that he never saw Eisenbund in that store before he took the bill of sale. At the conclusion of the trial the defendant requested the court to charge as follows:

"Defendant's Counsel: I ask the court to charge that, if the jury believe, from the testimony of Abraham Eisenbund, that he met the plaintiff in the store of Mrs. Aaronson before the attachment was issued, and that he asked her for the payment of his claim against her, and that she put him off, and that he asked her, in the presence of the plaintiff, whether she intended to sell the business, and she replied she did not, and that he then asked the plaintiff what he was doing there, and that he answered that he was merely on a visit, and that he did not intend to buy the place, as he was a jeweler, but that he did afterwards buy the place, that then the plaintiff was not a bona fide purchaser for value, and they must find a verdict for the defendant."

—And to the refusal of the court so to charge defendant excepted. The defendant was not entitled to have the court charge the effect of this testimony, if found to be true.

The defendant also requested the court to charge:

"Defendant's counsel asks the court to charge the jury that it is not necessary to establish by a direct proof actual notice to the plaintiff of a fraudulent intent on the part of Mrs. Aaronson, and that it is legitimate for the jury to consider whether the plaintiff had knowledge of facts pointing to a fraudulent intent, or calculated to awaken suspicion, and that the fact of notice or knowledge may be inferred from circumstances; and, if they should find that facts were known to him which were calculated to put him on inquiry, his want of diligence in making such inquiry is equivalent to a want of good faith, and the presumption of notice is a legal presumption which is not controverted. The Court: I decline to charge in the language requested, and repeat that fraud must exist in the minds of the two contracting parties."

The court had previously charged the jury:

"In all cases of this kind, where fraud is alleged or sought to be proved, it cannot, ordinarily, be shown by direct testimony, but from the indirect proof presented to you the conclusion may be honestly adduced that fraud did exist,

and was in the mind of the party when the act was committed. It would not constitute fraud on the part of the plaintiff if it were shown that Mrs Aaronson had it in her mind when she sold this grocery to him. He must have known at the time that she intended to defraud her creditors by such a sale. He must have had such guilty knowledge, and been a party thereto, to make it a fraudulent sale as against these creditors."

We think that this charge and the statement of the trial judge in declining to charge as requested was all the defendant was entitled to have said to the jury, and correctly states the rule as laid down in the cases. Waterbury v. Stuyvesant, 18 Wend. 363; Dudley v. Danforth, 61 N. Y. 626; Starin v. Kelly, 88 N. Y. 418; Billings v. Russell, 101 N. Y. 226, 4 N. E. 531.

The error complained of at folios 48 and 49 was cured by the ruling at folio 70. We have examined the other exceptions, and find no error that requires a reversal of the judgment.

The judgment and order appealed from should be affirmed, with costs. All concur.